UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CORPORATE RECOVERIES INCORPORATED,<br><br>Defendant. | CASE NO. 25-cv-00728-JHC<br><br>ORDER |

## I

## INTRODUCTION

This insurance matter comes before the Court on Plaintiff Scottsdale Insurance Company's Motion for Partial Summary Judgment. *See* Dkt. # 21. Defendant Corporate Recoveries Incorporated (CRI) sued David Hill and Fortune Tukwila, LLC. Hill and Fortune Tukwila brought counterclaims against CRI, arguing that CRI's actions violated the Washington Collection Agencies Act, the federal Fair Debt Collection Practices Act, the federal Fair Credit Reporting Act, and the Washington Consumer Protection Act. CRI tendered the counterclaims to its insurer, Scottsdale. Scottsdale moves for summary judgment, contending that it does not have a duty to defend or indemnify CRI. CRI responds that there is an issue of material fact as

to whether Scottsdale acted in bad faith such that coverage by estoppel applies, which precludes summary judgment. The Court concludes that the underlying lawsuit does not involve an "occurrence" under the commercial general liability (CGL) policy provisions nor an "error or omission" under the error and omissions policy provisions. The Court also concludes that there is an issue of material fact as to whether Scottsdale acted in bad faith while defending CRI. Accordingly, the Court GRANTS IN PART and DENIES IN PART Scottsdale's motion.

## II
## Background

A. The Underlying Lawsuit

CRI is a debt collections business. Dkt. # 22-1 at 4. In 2024, CRI sent a notice of default and commencement of third-party collection letter to Hill and Fortune Tukwila, a business in which Hill has majority ownership. Dkt. # 22-1 at 28-29. The letter stated that Hill's former romantic partner had contracted with CRI to collect damages owed to her by Hill and Fortune Tukwila and had assigned her claims against Hill and Fortune Tukwila to CRI for collection. Dkt. # 22-1 at 29. The letter stated that her claims included unpaid child support, unpaid committed intimate partner maintenance, wrongful termination, sexual harassment, domestic violence, and attempted murder of their child. Dkt. # 22-1 at 28-29.

CRI then sued Hill and Fortune Tukwila, seeking damages for these claims. Dkt. # 1 at 2. Hill and Fortune Tukwila brought several counterclaims against CRI. Dkt. # 22-1 at 2.

In their counterclaims, Hill and Fortune Tukwila alleged that CRI engaged in the unauthorized practice of law for Hill's former romantic partner, intentionally using family law proceedings to prevent Hill from getting access to or custody of his child. Dkt. # 22-1 at 10-12. They contended that CRI "leveraged [Hill's] desire to immediately bond with and be physically

present with his newborn infant daughter to obtain payment with respect to CRI's claims." Dkt. # 22-1 at 13. Among other actions, Hill and Fortune Tukwila alleged that CRI caused Hill's former romantic partner "to sign declarations that CRI either knew were false or should have known were false in connection to the parentage action and related matters." Dkt. # 22-1 at 11. Additionally, they said that CRI "either ignored or failed to take reasonable efforts to identify and respond to communications from [Hill's] counsel to obtain a paternity test and establish a parenting plan." Dkt. # 22-1 at 12. Hill and Fortune Tukwila further stated that CRI intended to take a 33 percent contingency fee from any of Hill's child support payments to his former romantic partner. Dkt. # 22-1 at 11.

Hill and Fortune Tukwila argued that CRI violated the Washington Collection Agencies Act, RCW Chapter 19.16, by threatening to sue (1) for wrongful termination of Hill's former romantic partner, (2) to collect future child support on her behalf, and (3) to collect future "committed intimate partner maintenance payments" on her behalf, all of which Hill and Fortune Tukwila argued are not legally viable claims. Dkt. # 22-1 at 13-14. Hill and Fortune Tukwila also claimed that several of CRI's actions constituted the unauthorized practice of law. Dkt. # 22-1 at 14-16. These actions included representing Hill's former romantic partner in various legal capacities, taking assignments of purported debts from creditors on a contingency fee basis, and then filing suit in CRI's own name. Dkt. # 22-1 at 14-15. Hill and Fortune Tukwila argued that CRI further violated the statute by sending letters with the intent to harass, intimidate, threaten, or embarrass Hill. Dkt. # 22-1 at 16.

Hill and Fortune Tukwila also claimed that CRI violated the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, by "making false, deceptive, or misleading" representations and taking actions to "harass, oppress, or abuse" Hill in connection with the

collection of alleged debt. Dkt. # 22-1 at 19. Hill and Fortune Tukwila also argued that CRI violated the Washington Consumer Protection Act, RCW Chapter 19.86, through "unfair and deceptive acts and practices." Dkt. # 22-1 at 21. Finally, Hill and Fortune Tukwila claimed that CRI violated the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, by obtaining a credit report for Hill without his authorization and for an impermissible purpose—to support CRI's "scheme to extract exorbitant and coercive sums from [Hill] that were not owed." Dkt. # 22-1 at 24.

B. The Policy

Scottsdale issued an insurance policy to CRI effective December 2023 to December 2024. Dkt. # 1 at 38. The policy includes "Commercial General Liability Coverage," which states in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Dkt. # 1 at 49.

The policy also provides, "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Dkt. # 1 at 49. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. # 1 at 63.

The policy also includes "Errors and Omissions [(E&O)] Coverage," which states,

> We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of an "error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "error or omission" to which this insurance does not apply."

Dkt. # 1 at 81. The policy defines an "error or omission" as "any negligent act, error or omission while performing those services described" in the policy. Dkt. # 1 at 89. The policy states that E&O coverage does not apply to injuries "arising out of a dishonest, fraudulent, malicious or criminal act by any insured." Dkt. # 1 at 82.

C. The Current Lawsuit

CRI notified Scottsdale of its lawsuit against Hill and Fortune Tukwila in February 2025. Dkt. # 23-1 at 147. In April 2025, Scottsdale agreed to defend CRI in this underlying lawsuit under a reservation of rights, including a "right to file a declaratory judgment action to request that a court determine it has no duty to defend or indemnify CRI under the Policy and for a declaration that Scottsdale may withdraw from the defense." Dkt. # 23-1 at 182. In its letter accepting CRI's defense, Scottsdale noted that it did not believe the policy covered the counterclaims because the counterclaims did not allege an "occurrence" or an "error or omission" under the relevant sections of the policy. Dkt. # 23-1 at 182. Scottsdale appointed an independent attorney to represent CRI in its lawsuit against Hill and Fortune Tukwila. Dkt. # 23-1 at 183.

In June 2025, CRI requested $73,983 in reimbursement for defense costs it incurred before Scottsdale accepted its defense. Dkt. # 23-1 at 193-98. Scottsdale denied this request, instead offering to pay $22,245.76. Dkt. # 23-1 at 197-98. Scottsdale said that it had reviewed CRI's invoice and deducted time and entries that "were not reasonably related to the defense of

the counterclaims, had insufficient detail to assess the work performed[,] and/or were incurred after the date appointed defense counsel appeared in the action." Dkt. # 23-1 at 197. Scottsdale stated that after making these deductions, it would pay $230 per hour for partner work, $205 for associate work, and $115 for paralegal work. Dkt. # 23-1 at 198.

Scottsdale then brought the current suit against CRI, contending that its insurance policy does not provide coverage for Hill and Fortune Tukwila's counterclaims against CRI. *See* Dkt. # 1. It now moves for partial summary judgment, contending that it does not owe a duty to defend or a duty to indemnify CRI and seeking declaratory relief. *See* Dkt. # 21.

## III
## Discussion

### A. Legal Standards

Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); Fed. R. Civ. P. 56(e). Underlying facts are viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

Under Washington law, the interpretation of an insurance policy involves a question of law. *Overton v. Consol. Ins. Co.*, 145 Wash.2d 417, 424, 38 P.3d 322 (2002). Courts

interpreting an insurance policy will give the language its plain meaning, construing the policy as would an "average" person purchasing insurance. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 52, 164 P.3d 454 (2007). An ambiguity in the policy is interpreted in favor of the insured. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 411, 229 P.3d 693 (2010). A clause in an insurance policy is ambiguous if it is "fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171, 110 P.3d 733 (2005).

Under Washington law, the duty to defend is broader than the duty to indemnify. *Woo*, 161 Wash.2d at 52. An insurance company has the duty to indemnify if the insurance policy *actually* covers the insured's liability, while the duty to defend arises if the insurance policy *conceivably* covers the claims against the insured. *Am. Best Food*, 168 Wash.2d at 404. An insurer is relieved of the duty to defend only if the policy clearly does not cover the claim. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wash.2d 751, 760, 58 P.3d 276 (2002).

The duty to defend is generally determined from the "eight corners" of the insurance contract and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803, 329 P.3d 59 (2014), *as corrected* (Aug. 6, 2014). In determining whether there is a duty to defend, the question is whether "there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Food*, 168 Wash.2d at 405. Extrinsic evidence cannot be the basis for the denial of coverage. *Expedia*, 180 Wash.2d at 804.

There are two steps to determining whether coverage exists: First, "[t]he insured must show the loss falls within the scope of the policy insured losses." *McDonald v. State Farm Fire and Cas. Co.*, 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). Then, "[t]o avoid coverage, the

insurer must . . . show the loss is excluded by specific policy language." *Id.* As discussed below, CRI does not get past the first step.

B. The Underlying Lawsuit Does Not Involve an "Occurrence"

Scottsdale argues that Hill and Fortune Tukwila's counterclaims do not allege an "occurrence," so they are not covered under the CGL policy. Dkt. # 21 at 11-12. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. # 1 at 63. Scottsdale contends that Hill and Tukwila Fortune's counterclaims do not allege occurrences because "[e]ach cause of action . . . is based on alleged behavior that was deliberate and intentional and/or coercive and misleading." Dkt. # 21 at 12. The Court agrees.

When, as here, an insurance policy does not define "accident," courts look to the "common sense definition" of the term. *See IDS Prop. Cas. Ins. Co. v. Ivanov*, 2019 WL 2646112, at *4 (W.D. Wash. June 27, 2019) (citing *Roller v. Stonewall Ins. Co.*, 115 Wash.2d 679, 684-85, 801 P.2d 207 (1990), *overruled on other grounds by Butzberger v. Foster*, 151 Wash.2d 396, 402, 89 P.3d 689 (2004)). In insurance coverage disputes, Washington courts define an "accident" as "an unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 113 Wash.2d 91, 95, 776 P.2d 123 (1989) (citing *Tieton v. Gen. Ins. Co. of Am.*, 61 Wash.2d 716, 721-22, 380 P.2d 127 (1963)). "An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent and unforeseen happening occurs which produces the damage." *W. Nat. Assur. Co. v. Hecker*, 43 Wash. App. 816, 822, 719 P.2d 954 (1986).

The counterclaims against CRI allege solely intentional conduct by CRI that furthered its "scheme to extract exorbitant and coercive sums from [Hill] that were not owed." Dkt. # 22-1 at

24. The counterclaims therefore do not involve "occurrences" under the policy. *See Allstate Prop. & Cas. Ins. Co. v. Plautz*, 659 F. Supp. 3d 1149, 1155 (W.D. Wash. 2023) (concluding that third-party claims that the insured intentionally failed to reveal the condition of the property regarding water penetration and damage in the home did not allege accidental "occurrences" and were not covered by the policy).

CRI argues that some of the counterclaims are "purely negligence claims," and thus are covered under the policy. Dkt # 27 at 9. It points to Hill and Fortune Tukwila's statements that "CRI caused [Hill's former romantic partner] to sign declarations that CRI either knew were false *or should have known were false*," and that CRI "either ignored *or failed to take reasonable efforts* to identify and respond to communications from [Hill's] counsel to obtain a paternity test and establish a parenting plan." Dkt. #22-1 at 11 (emphasis added), 12 (emphasis added). These factual allegations are related to the counterclaims regarding CRI's unauthorized practice of law. Accordingly, the critical intentional conduct at issue is CRI acting as Hill's former romantic partner's legal representative. *See Jones v. Allstate Ins. Co.*, 146 Wash.2d 291, 301, 45 P.3d 1068 (2002) ("The inquiry into whether an activity constitutes the practice of law has two steps: the determination as to whether the activity is the practice of law and, if so, determining whether the practice is unauthorized."). These two statements addressing the *quality* of CRI's alleged representation of Hill's former romantic partner are therefore nonessential to the related claim and injury.

CRI further argues that several of the counterclaims under state and federal statutes include negligence as an element. Dkt. # 31 at 6-7.[1] But the CGL policy states that it only

[1] CRI raised this argument for the first time in its sur-reply. Dkt. # 31. Scottsdale requests that the Court strike this entry and refuse to consider it because it was filed late and without leave of the Court. *See* Dkt. # 35. But because CRI's argument fails, the Court need not address Scottsdale's request.

applies to injuries "caused by an 'occurrence.'" Dkt. # 1 at 49. And the counterclaims allege deliberate unlawful actions that caused injury. As a result, even if the counterclaims involved negligence as an element, the conduct giving rise to the alleged injuries in the counterclaims does not qualify as an accidental "occurrence." *See State Farm Fire & Cas. Co. v. El-Moslimany*, 178 F. Supp. 3d 1048, 1058 (W.D. Wash. 2016) (finding no accidental "occurrence" when the facts alleged by the third-party claimant implied that, regardless of whether the insured knew their allegedly defamatory statements were false, "they acted with the intention to cause [her] harm").

The counterclaims allege deliberate acts by CRI, not accidents. Accordingly, the Court concludes that the counterclaims do not involve an "occurrence" under the CGL policy, so the policy does not cover the counterclaims.[2]

C. The Underlying Lawsuit Does Not Involve Errors or Omissions

Scottsdale also argues that the counterclaims are not covered under CRI's E&O coverage. Dkt. # 21 at 13. The E&O section of the policy states that an "error or omission" is "any negligent act, error or omission while performing those services described" in the policy. Dkt. # 1 at 89. And E&O coverage does not apply to "[i]njury arising out of a dishonest, fraudulent, malicious or criminal act by any insured." Dkt. # 1 at 82. Scottsdale contends that the counterclaims do not allege negligent acts, errors, or omissions, so they are not covered under the policy. Dkt. # 21 at 13. The Court agrees.

Scottsdale cites *Scottsdale Insurance Co. v. Mayer*, 2018 WL 3352649 (E.D. Wash. July 9, 2018), to support its argument that the counterclaims do not involve errors or omissions under

[2] Scottsdale also argues that the counterclaims do not allege bodily injury or property damage as required under the CGL policy. *See* Dkt. # 21. But because the Court concludes that the counterclaims do not allege covered occurrences under the CGL policy, it does not address these arguments.

the policy. Dkt. # 21 at 13-14. There, the insured was sued for receiving government payments related to providing housing under a voucher program without forwarding those payments to the actual provider of the housing as contractually agreed. 2018 WL 3352649, at *1. As here, the insured's policy defined an error or omission as a negligent act, error, or omission. *Id.* at *2. The policy also excluded errors or omissions for which the insured was liable because of a contract or agreement and injuries arising out of dishonest, fraudulent, malicious, or criminal acts by the insured. *Id.* The district court concluded that lawsuit against the insured did not include errors or omissions because the allegations in the complaint "relate[d] to an intentional, fraudulent act; no negligence is alleged here." *Id.* at *3. Additionally, the court stated that the allegations fell within the exclusions for injuries arising from breach of contract and fraudulent conduct. *Id.* Accordingly, the court concluded that the allegations in the underlying lawsuit were not covered by the E&O policy. *Id.* at *4.

Here, too, in their counterclaims, Hill and Fortune Tukwila do not claim that CRI acted negligently. They instead contend that CRI intentionally engaged in conduct to harass Hill in connection with the collection of purported debt. *See* Dkt. # 22-1. Hill and Fortune Tukwila allege that CRI sent a letter and filed a lawsuit to collect debts it knew were not owed and improperly represented Hill's former romantic partner in family law proceedings in order to alienate Hill from his child, making him more likely to pay those purported debts. And as described above, even if Hill and Fortune Tukwila made some statements that the *quality* of CRI's alleged legal representation of Hill's former romantic partner may have been negligent, the potentially negligent nature of those actions is not central to the claim that CRI intentionally engaged in the unauthorized practice of law in a broader scheme to harm Hill. *See Grp. Voyagers, Inc. v. Emps. Ins. of Wausau*, 66 F. App'x 740, 741 (9th Cir. 2003) (holding that for

E&O coverage related to administration of documents, even if the insured could claim potential negligence in drafting or interpreting documents, this would not negate its deliberate conduct in administering the documents); *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415, 419 (7th Cir. 1993) ("Although [insured's counsel] may have been mistaken, or even negligent . . . , this does not convert [the insured's] intentional act in refusing to further honor the collective bargaining agreement into a negligent one.").

Accordingly, because the allegations in the counterclaims do not involve errors or omissions, they are not covered under the policy.

D. Coverage by Estoppel

CRI argues coverage by estoppel, an affirmative defense which would prevent Scottsdale from denying CRI coverage even if the Court concludes that Scottsdale did not have a duty to defend or indemnify CRI under its insurance policy. Dkt. # 27 at 15.[3]

"Where an insurer acts in bad faith in failing to defend . . . Washington cases recognize that coverage by estoppel is one appropriate remedy." *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 563, 951 P.2d 1124 (1998). An insurer "who accepts the duty to defend under a reservation of rights but then performs the duty in bad faith, is no less liable than the insurer who accepts but later rejects the duty." *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 392, 823 P.2d 499 (1992). In fact, "[b]ecause a reservation of rights defense is fraught with potential conflicts, it implicates an enhanced duty of good faith toward the insured." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash.2d 872, 879, 297 P.3d 688 (2013). Accordingly, if an insurer acts in bad faith

[3] In its Answer, CRI also pleads the affirmative defense of equitable estoppel. Dkt. # 36 at 3-4. But it does not seem to argue equitable estoppel in response to Scottsdale's summary judgment motion, instead specifically referencing only coverage by estoppel.

while handling a claim under a reservation of rights, "the insurer is estopped from denying coverage." *Butler*, 118 Wash.2d at 392. If an insured establishes that the insurer handled a claim in bad faith, there is a rebuttable "presumption of harm" to the insured. *Id.* at 394. Thus, if the insured prevails on the bad faith claim and the insurer fails to rebut the presumption of harm, "the insurer is estopped from denying coverage." *Id.*

In Washington, an insurer's duty to defend "arises not at the moment of tender, but upon the filing of a complaint alleging facts that could potentially require coverage." *Nat'l Sur. Corp.*, 176 Wash.2d at 889. A "breach of the duty to defend cannot occur before tender," but an insured "can recover [pre-tender] fees and costs except where a late tender prejudiced the insurer." *Id.* If an insurer accepts defense of an action, with or without a reservation of rights, "the insured receives the benefit of a defense until a court declares none is owed." *Id.* at 885. Thus, an insurer "may be held responsible for the reasonable defense costs incurred by its insured until [a] trial court determine[s] [that the insurer] had no duty to defend." *Id.* at 695. An insurer is released from its obligation to pay for the defense of an action only "[a]fter obtaining a declaration of noncoverage." *Id.* at 887-88.

CRI bears the burden of establishing its affirmative defenses, including coverage by estoppel. *See Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981) ("[T]he burden is always on the party advancing an affirmative defense to establish its validity."). Because CRI bears the burden of proof on its affirmative defenses, Scottsdale can meet its burden at summary judgment by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Under Rule 56(e), here, CRI as the nonmoving party must go beyond the pleadings to defeat summary judgment. *Id.* at 324.

To support its coverage by estoppel argument, CRI asserts that Scottsdale's appointed defense counsel for CRI had undisclosed conflicts of interest and its "conduct, communication, and decisions" in the context of CRI's defense constituted bad faith. Dkt. # 27 at 6-7. In its answers to Scottsdale's interrogatories, CRI stated that Scottsdale's appointed counsel for CRI also worked for Scottsdale and did not disclose that fact. Dkt. # 29 at 10-11. CRI also said that its appointed counsel refused to do legal research for a third-party claim against Hill's former romantic partner, declined to do discovery on certain issues, delayed issuing an important subpoena, and otherwise did not act promptly based on CRI's requests. Dkt. # 29 at 12-15.

CRI also argues that Scottsdale's refusal to reimburse the full amount of CRI's requested defense costs constitutes bad faith sufficient for coverage by estoppel. Dkt. # 27 at 4-6. To support this argument, CRI submits its communications with Scottsdale where Scottsdale refused to fully reimburse CRI for attorney fees incurred before Scottsdale's acceptance of coverage. *See* Dkt. # 23-1. Neither party cites cases that clarify whether coverage by estoppel would apply under these circumstances.[4]

Viewed through the forgiving lens of Rule 56, the combination of CRI's interrogatory answers regarding its appointed attorney's conduct and the communications in which Scottsdale disputed CRI's attorney fees incurred before Scottsdale accepted coverage sufficiently demonstrates a genuine issue of material fact regarding whether Scottsdale acted in bad faith while defending CRI. *See Butler*, 118 Wash.2d at 395, 405 (holding that there was an issue of

---

[4] Scottsdale states that coverage by estoppel does not apply here because CRI's request for reimbursement is a first-party claim, and coverage by estoppel does not apply to first-party claims. Dkt. # 28 at 9; *see Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash.2d 269, 284, 961 P.2d 933 (1998). But CRI argues that coverage by estoppel applies because Scottsdale in bad faith breached its duty to defend CRI from a third-party claim. So Scottsdale's argument that coverage by estoppel should not apply because this suit involves a first-party claim fails.

material fact precluding summary judgment on bad faith and coverage by estoppel where the insured asserted that the insurer delayed discovery, failed to investigate, and exhibited greater interest in its own financial position than the insured's). There is thus an issue of material fact as to whether Scottsdale is estopped from denying CRI coverage for the counterclaims.

## IV
## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Scottsdale's motion for partial summary judgment. The Court GRANTS summary judgment to Scottsdale on the issue of whether coverage exists under the policy. But there is an issue of material fact as to whether Scottsdale is estopped from asserting lack of coverage. Accordingly, the Court DENIES summary judgment as to Scottsdale's requested declaratory relief.

Dated this 9th day of September, 2026.

John H. Chun
United States District Judge